UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Jeremy Grove and Amanda Grove,<br>            Plaintiffs | ) <br> ) <br> ) | |
| v. | ) | Case No. 07-1263 |
| Manchester Tank & Equipment Co., and<br>K.A. Bergquist Inc.,<br>            Defendants | ) <br> ) <br> ) <br> ) | consolidated<br>with |
| Bradley Clerk and Michelle Clark<br>            Plaintiffs<br>v. | ) <br> ) <br> ) <br> ) | |
| Manchester Tank & Equipment Co., and<br>K.A. Bergquist Inc.,<br>            Defendants | ) <br> ) <br> ) | 07-1268<br><br>and |
| Larry K. Smith Jr. and Melissa Smith,<br>            Plaintiffs<br>v.<br>Manchester Tank & Equipment Co., and<br>K.A. Bergquist Inc.,<br>            Defendants | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | 07-1280 |

**ORDER AND OPINION**

The parties have consented to have this case heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the case to me. Now before the Court is the motion for summary judgment[1] (#75) by defendant KA Bergquist. The Plaintiffs have filed responses, to which Bergquist has replied. I have carefully considered the arguments and evidence submitted by the parties. As explained below, the motion is granted as to

---

[1] Filed as a motion to dismiss, the motion was converted to a motion for summary judgment. See Order (Doc. #80) entered May 11, 2010.

Count III and denied as to Count IV.

## JURISDICTION AND VENUE

The Plaintiffs are citizens of the State of Illinois. Defendant Manchester Tank & Equipment Company was incorporated in Delaware and has its principle place of business in Tennessee. Defendant K. A. Bergquist Inc. was incorporated in the State of Ohio and has its principle place of business in Toledo, Ohio . Third Party Defendant Hicksgas was incorporated in the State of Indiana and has its principle place of business in Illinois. The amount in controversy in each of these three consolidated cases exceeds $75,000. This Court therefore has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. 1332.

The events that led to this lawsuit occurred within Tazewell County, Illinois, a county within the Central District of Illinois, Peoria Division. Venue is therefore proper pursuant to 28 U.S.C. 1391(a)(2).

## UNDISPUTED FACTS

Manchester Tank and Equipment Company (herein "Manchester") designs and manufactures aluminum tanks. Instructions and warnings, also prepared by Manchester, accompany those tanks when sold. K. A. Bergquist Inc. (herein "Bergquist") distributes and sells those tanks. Bergquist plays no role in and exercises no control over the design or manufacture of the tanks or in preparing the instructions and warnings. Hicksgas purchases the tanks from Bergquist and fills them with, *inter alia*, propane gas. The filled tanks are stored at various Hicksgas' facilities, including one in Pekin, Illinois, and another in Decatur, Illinois.

In early August of 2005, Jake Slagley, the manager of the Hicksgas facility in Decatur, Illinois, found a leaky Manchester tank at his facility. He contacted Bergquist, and spoke with

someone named Tom. Tom took down information over the phone. Shortly thereafter, Slagley received a "field destroy form," which instructed him to dispose of the cylinder, sign the form, and send it back to Tom for a credit.[2]

On August 23, 2005, Bradley Clark, the manager of the Pekin Hicksgas facility, discovered that five brand new aluminum Manchester Tanks, which had been filled with propane gas, were leaking. These tanks were separated from other tanks on the property and placed at the edge of the bottle dock at the Hicksgas facility. Clark then called Bergquist, seeking guidance as to what to do with the five tanks. No one from Bergquist returned his call. On August 25, there was an explosion and fire at the Pekin Hicksgas facility, allegedly caused by the leaking propane. Three employees were injured: Bradley Clark, Jeremy Grove, and Larry Smith.

These three employees, along with their wives, filed separate complaints in Tazewell County. The cases were removed to this Court and consolidated.

The original state court complaints named Manchester as defendant and Bergquist as respondent in discovery. Manchester was sued as the manufacturer of the tanks. First amended complaints added Bergquist as a defendant, alleging that Bergquist sold the leaky tanks to Hicksgas. As is pertinent to the pending motion, the first amended complaints included only one claim against Bergquist, a strict product liability claim for the sale of unreasonably dangerous propane tanks. These claims, stated in Count III of each of the first amended complaints, were

---

[2]Bergquist asserts that the facts in this paragraph are immaterial. The new negligence claim in Count IV is based on these facts. In the pending summary judgment motion, Bergquist argues that Count IV is time barred, that the facts give rise to no duty, and that there is no causation. The alleged facts on which the claim is based cannot be excluded from consideration in resolving these arguments. These facts become "immaterial" if but only if the Court finds that the negligence claim is legally deficient.

3

based on the allegations that Bergquist sold propane gas tanks to Hicksgas and that the tanks were unreasonably dangerous at the time they left Bergquist's control "in that they permitted propane to leak out of said tank(s), resulting in an explosion and fire. ..." On April 4, 2008, Bergquist answered, denying all liability and setting forth affirmative defenses.

On March 8, 2010, Plaintiffs filed second amended complaints (Docs. # 69, 70 and 71). These complaints added a second count against Bergquist, this one sounding in negligence. In the new Count IV, Plaintiffs allege that Bergquist failed to advise Hicksgas employees to remove leaking tanks from service immediately and without the need for an inspection by Bergquist, and that the cost of the tanks would be refunded or credited without the need of an inspection by Bergquist. According to Plaintiffs, the grounds for this claim were unknown until Jake Slagley was deposed on August 19, 2009.

Bergquist has moved for summary judgment as to both the strict liability and the negligence counts. According to Bergquist, a strict liability claim against a distributor must be dismissed once the manufacturer has been identified and joined. Plaintiffs respond that this rule does not apply if the distributor has actual knowledge of the defect.

Bergquist also argues that the new negligence claim fails for several reasons. First, Bergquist assserts that the claim is time barred, because it was filed after expiration of the original statute of limitations and does not relate back to the original filing date. Bergquist also asserts that the facts give rise to no duty and that causation is missing. Plaintiffs respond that the amendment is timely because it is based on new facts, that duty arises as a matter of law, and that causation is a question of fact.

**STRICT LIABILITY**

In Illinois, all persons in the distributive chain, including suppliers, distributors, wholesalers and retailers, may be strictly liable for injuries resulting from an unreasonably dangerous product. Kellerman v. Crowe, 518 N.E.2d 116, 117 (Ill.1987). Such claims are subject to 735 ILCS 5/2-621, which governs the liability of non-manufacturers in strict liability products actions[3]. The statute first provides:

> In any product liability action based in whole or in part on the doctrine of strict liability in tort commenced or maintained against a defendant or defendants, other than the manufacturer, that party shall upon answering or otherwise pleading file an affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage.

735 ILCS 5/2-621(a)[4].

Once the manufacturer has been added to the lawsuit, the statute mandates "dismissal of a strict liability in tort claim against the certifying defendant or defendants, provided the certifying defendant or defendants are not within the categories set forth in subsection (c) of this Section." 735 ILCS 5/2-621(b). As is pertinent here, subsection (c) provides:

> A court shall not enter a dismissal order relative to any certifying defendant ... where the plaintiff can show ... (2) that the defendant had actual knowledge of the defect in the

---

[3] While this statute appears procedural in nature, its application is outcome determinative, and it therefore governs strict liability claims in federal court. See, e.g., Farris v. Satzinger G.M.B.H. & co., 681 F. Supp.485, 488 (N.D.Ill.1987). Accord, Indeck Power Equipment Co. v. Jefferson Smurfit Corp., 881 F. Supp. 338, 341 (N.D.Ill.1995); Ungaro v. Rosalco Inc., 948 F. Supp. 783, 785 (N.D.Ill.1996).

[4] The Illinois Civil Justice Reform Amendments of 1995 amended 735 ILCS 5/2-621, but was held unconstitutional in its entirety by the Supreme Court of Illinois. See Best v. Taylor Mach. Works, 689 N.E.2d 1057, 1103-04 (Ill.1997). "The effect of enacting an unconstitutional act is to leave the law in force as it was before the enactment of the unconstitutional act." Hurst v. Capital Cities Media, Inc., 754 N.E.2d 429, 438 (Ill.App.2001). Therefore, the version of section 2-621 that was in effect before the 1995 amendment is applicable to this case. See, LaRoe v. Cassens & Sons, Inc., 472 F.Supp.2d 1041, 1046 n.1 (S.D. Ill.,2006).

product which caused the injury, death or damage."

735 ILCS 5/2-621(c).

Bergquist is not the manufacturer, and the true manufacturer has been named and is now before the Court in this case. Plaintiffs assert, however, that the exception to dismissal cited above applies, because Count IV includes the allegation that Bergquist had knowledge of the alleged dangerous condition. Plaintiffs' assertion is accompanied by no argument and by no citation to evidence in the record.

The motion before the Court is a motion for summary judgment. As Fed.R.Civ.Proc. 56(e) makes clear, a party opposing summary judgment may not rely on the allegations of the pleadings. Rather:

> [T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

See also, First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290 (1968)(Allegations must be supported by significant probative evidence.); "Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986)("There must be evidence on which the jury could reasonably find for the [non-movant].").

Despite their failure to respond properly to this issue, the Plaintiffs have, in their statement of additional material facts, pointed to some evidence that Bergquist knew about defects in the tanks prior to the August 25 explosion, namely the defective tank in Decatur, and Clark's telephone call to Bergquist's representative about the five leaking tanks. The problem with this evidence, according to Bergquist, is that any knowledge that might be imputed to Bergquist from this evidence occurred <u>after</u> the sale was complete, and under Illinois law, the focus is on the time when

the product left the manufacturer's control.

In support of its proposition that section 2-621 requires knowledge of the defect at the time the product left the manufacturer's control, Defendant cites Mikolajczyk v. Ford Motor Co., 901 N.E.2d 329 (Ill.2008). The issue in Mikolajczyk was which test (the risk-utility test or the consumer expectation test) is used to determine if a product was unreasonably dangerous at the time it left the manufacturer's control. The Court began its analysis with a general statement of the law: that one of the essential elements of a strict liability action is proof that an unreasonably dangerous condition existed at the time the product left the manufacturers control, and that there are three ways to prove an unreasonably dangerous condition: a defect in the product, a defect in the design, or a failure to warn of a known dangerous condition. Id. at 335.

From this general statement of Illinois law, Defendant jumps to the conclusion that the 'knowledge" exception found in section 2-621(c) must also focus exclusively on that same time frame: at the time the product left the manufacturer's control. Nothing in Mikolajczyk stands for that proposition. The case contains no discussion about exceptions to section 2-621, and I find this case unhelpful on the point of law before this Court.

The statute itself does not answer the question; it merely requires "knowledge" of the defect. Bergquist's argument that the statute is clear and must be given effect as written is without merit.

A number of courts have made general statements in *dicta* about this statutory section. For example, in LaRoe, 472 F.Supp. 2d at 1041, the court noted that, although all entities in the chain of distribution of an allegedly defective product are subject to strict liability in tort, the seller's exception allows dismissal of any non-manufacturing defendant "who has not contributed to the alleged defect." LaRoe, 472 F. Supp. at 1045. The court noted that the purpose of the seller's

exception is to allow dismissal from a strict product liability claim of any non-manufacturing defendant "whose sole basis of liability is their role as a member of the distributive chain." Id. at 1046. See also, Kellerman v. Crowe, 518 N.E.2d 116, 117-18 (Ill.1987) (noting generally that section 2-621 allows dismissal of non-manufacturing defendants "such as a retailer or other link in the distribution chain" unless there is a showing that the defendant "shares some responsibility for the creation of the defect in the product or had actual knowledge of its existence."); and Cherry v. Siemans Med.Sys., Inc., 565 N.E.2d 215, 218, 221 (Ill.App.1990)(seller's exception applies to any non-manufacturing defendant "who has not been shown to have created or contributed to the alleged defect" or who was not "independently responsible for the defect").

In none of those cases was the issue before the Court identical to the one now before this Court. The quoted language does reveal, however, some clues about how courts generally view the knowledge exception, although those clues are not entirely consistent. All of these general statements indicate, however, that a defendant who has not done or known anything, other than be a link in the chain, is entitled to dismissal. Where there is something suggesting more culpability, however, the defendant is viewed with more jaundiced eyes.

This generalized conclusion does not answer the question posed by the pending motion, and neither party has directed this Court to a factually analogous case. The closest case the Court has located is Indeck Power Equipment Co. v. Jefferson Smurfit Corp., 881 F. Supp. 338 (N.D.Ill.1995). In that case, the plaintiff owned and leased power generating equipment, including trailer mounted boilers designed to generate steam. Defendant leased one such boiler to provide a temporary source of steam during repairs to its plant. A fire at the plan damaged both the boiler and parts of the plant.

Plaintiff, the lessor, sued the plant, the lessee. The lessee answered and filed a counterclaim, alleging that the leased boiler was unreasonably dangerous due to a defective valve, and that this valve had caused the fire. The lessor certified the manufacturer and moved for dismissal under the seller's exception. In response to the motion to dismiss, the lessee included the following facts: that one of the lessor's employees had noticed a malfunction in the valve; that the plant manager had called the lessor to report that malfunction; and that a replacement valve was shipped to address the "defect." The court denied the motion to dismiss, holding that the complaint adequately alleged the lessor's actual knowledge of a defective valve "before the valve allegedly failed." The court therefore declined to dismiss the lessor under 5/2-621(c)(2). Id. at 342.

The Indeck court assumed without discussion that the type of knowledge sufficient to defeat the seller's exception is knowledge of the defect at any time before the damage occurs. That assumption was understandable in Indeck, because the case was before the court on a motion to dismiss, not a motion for summary judgment when evidence must be produced. The case now before this Court presents the question whether a general rule of law may properly be drawn from Indeck's assumption. In the context of a summary judgment motion, I do not believe that knowledge of a manufacturing defect acquired by a seller *after* its sale of the product is the type of knowledge sufficient to defeat the seller's exception.

Strict liability may be imposed on any link in the distributive chain, but Illinois recognizes that the theory is generally intended to impute liability to the link in that chain most directly responsible for the defect, namely the manufacturer, and that the underlying purpose of the theory is consumer protection. If a seller further down the chain knows at the time it sells the product that the product is unreasonably dangerous, then the seller is equally as culpable as the manufacturer

in providing that product to the consumer, and that seller cannot be dismissed out of the strict liability action. On the other hand, if the seller's knowledge of a manufacturing defect was acquired after the sale, the failure of the non-manufacturer seller to act on that knowledge gives rise to a different kind of culpability, one much more akin to negligence than to strict liability.

Because the evidence shows that Bergquist had no knowledge of any unreasonably dangerous condition in the tanks at the time the tanks were sold to Hicksgas, I find that the seller's exception applies. The summary judgment motion as to the strict liability claim against Bergquist in Count III is accordingly GRANTED.

**NEGLIGENCE**

Bergquist raises several challenges to the Plaintiffs' new negligence claim. The first challenge questions whether this new claim relates back to the date of the original complaint, because if it does not, then it is time barred.

Relation back is governed by Rule 15 of the Federal Rules of Civil Procedure. This Rule provides in pertinent part:

>(1) An amendment to a pleading relates back to the date of the original pleading when:
>    \*   \*   \*   \*   \*
>    (C) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out-in the original pleading.

Fed.R.Civ.P. 15(c)(1)(C).

Bergquist relies on Mayle v. Felix, 545 U.S. 644 (2005) for interpretation of the phrase "conduct, transaction, or occurrence." In Mayle, however, the Court was considering the meaning of that phrase in the context of a *habeas corpus* petition, a context inherently distinct from a general civil case. The Court's very careful definition of the issue before it and description of the conflict

among the Circuits was limited to that context. It is very important, then, in reading <u>Mayle</u>, to look only to the Court's broad discussion of Rule 15 and not to its application in the context of a habeas case.

After a long citation of the conflicting circuit cases, the <u>Mahle</u> Court stated:

> As these decisions illustrate, Rule 15(c) relaxes, but does not obliterate, the statute of limitations; hence relation back depends on the existence of a common "core of operative facts" uniting the original and newly asserted claims.

<u>Id.</u> at 657. The Court went on to compare the plaintiff's theory in the case before it with the facts underlying the complaint in <u>Tiller v. Atlantic Coast Line R. Co.</u>, 323 U.S. 574 (1945). In <u>Mahle</u>, the petitioner targeted factually distinct episodes (pretrial police interrogation of a witness, and police interrogation of Tiller himself at a different time and place), each of which allegedly gave rise to a separate injury to Tiller.

In contrast, the plaintiff in <u>Tiller</u> was the widow of a worker killed by a railroad car. She originally sued under FELA, alleging various negligent acts by the railroad. She then amended her complaint to add a claim under the Federal Boiler Inspection Act for failure to provide the train's locomotive with a rear light. Relation back was allowed, even though the amendment invoked a new legal theory based on facts not originally asserted. As the <u>Mayle</u> Court explained, there was "but one episode-in-suit" in <u>Tiller</u>. The worker's death was attributed from the outset to the railroad's failure to provide him with a reasonably safe place to work. Relation back is allowed generally, said the <u>Mayle</u> Court, because "personal injury plaintiffs often cannot pinpoint the precise cause of an injury prior to discovery." <u>Id.</u> at 660.

The case before this Court is much more akin to <u>Tiller</u> than to <u>Mahle</u>. There is but one "episode-in-suit," namely the explosion and fire that injured the Hicksgas employees. Adding a new

legal theory based on previously unplead facts relates back, because the new claim is simply a different theory about why the Defendant is liable for the same injury. Moreover, as in Tiller, the Plaintiffs had no way to know of the facts that support this new theory until they had conducted discovery. I conclude that the amendment relates back to the original, timely complaints.

Bergquist next argues that the facts on which the negligence claim is based give rise to no cognizable duty, an essential element in any negligence claim. Whether a duty exists is a question of law to be resolved by the Court. Schur v. L.A. Weight Loss Centers, Inc., 577 F.3d 752, 766 (7th Cir. 2009), citing Widlowski v. Durkee Foods, 562 N.E.2d 967, 968 (Ill.1990). In determining whether a duty exists, Illinois courts look to certain relevant factors. These include: (1) the reasonable foreseeability that the defendant's conduct may injure another, (2) the likelihood of an injury occurring, (3) the magnitude of the burden of guarding against such injury, and (4) the consequences of placing that burden on the defendant. See, Ward v. KMart Corp., 554 N.E.2d 223 (Ill.1990); Kirk v. Michael Reese Hosp. & Med. Ctr., 513 N.E.2d 387 (Ill.1987); Happel v. Wal-Mart Stores, Inc., 766 N.E.2d 1118, 1123-1124 (Ill.2002).

Bergquist characterizes the negligence claim as a failure to warn claim. Assuming for the moment that it is such a claim, a duty to warn "exists where there is unequal knowledge, actual or constructive, of a dangerous condition, and the defendant, possessed of such knowledge, knows or should know that harm might or could occur if no warning is given." Happel, 766 N.E.2d at 1123. It is perfectly logical that a duty to warn only arises where there is unequal knowledge, for the purpose of a warning is to apprise a person of a danger of which he is not already aware, so that appropriate protective measures may be taken. See, Timm v. Indian Springs Recreation Ass'n, 589 N.E.2d 988 (Ill.App.1992); Kokoyachuk v. Aeroquip Corp, 526 N.E.2d 607 (Ill.App.1988); Kirby

v. General Paving, 229 N.E.2d 777 (Ill.App.1967); Bakovich v. Peoples Gas Light & Coke Co., 195 N.E.2d 260, 263 (Ill.App.1963).

As Bergquist points out, there is no unequal knowledge in this case. Hicksgas employees were no less aware of the dangerous condition than was Bergquist. The evidence shows that the Plaintiffs knew the tanks were leaking, knew that leaking propane tanks presented a serious danger, and knew that emptying the tanks of propane was the proper way to respond to that danger. If the negligence claim is a failure to warn claim, it fails for lack of a duty to warn.

Plaintiffs, however, assert that the claim is not a duty to warn case. Bergquist's failure to respond to Clark's inquiry about the leaking tanks led him to wait to empty the tanks of propane. Had the tanks been purged, there would have been no fuel for the explosion and/or fire. Under identical circumstances that had arisen only weeks before at another Hicksgas facility, Bergquist had in fact undertaken to advise Hicksgas what to do with the leaking tanks: empty them and fill out the form that Bergquist faxed.

According to the Plaintiffs, the duty that arises from this set of facts arises from the Restatement (Second) of Torts (1965), § 324A, which provides:

> One who undertakes, gratuitously or for consideration, to render a service to another which he should recognizes as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if:
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts (1965), § 324A, adopted in Rowe v. State Bank of Lombard, 531 N.E.2d 1358, 1365 (Ill.1988).

Plaintiffs interpret this section as imputing liability for the acts of third parties (here Manchester) to one undertaking a service (here Bergquist) because (1) Bergquist failed to exercise reasonable care and increased the risk of harm to the Plaintiffs or (2) the Plaintiffs' reliance on Bergquist's undertaking caused them harm.

It is clear that the reliance argument must fail. Bradley Clark did not act in reliance on what Bergquist had done at the other Hicksgas facility. Indeed, none of the Plaintiffs knew about this until 2 years into this litigation. None of the harm suffered by the Plaintiffs resulted because of what Bergquist had done at the Decatur Hicksgas facility.

The same cannot be said, however, about the risk of harm. While it is certainly true that the Hicksgas employees were aware of the dangers of propane, Bergquist's failure to respond to an inquiry from those employees about tanks that were leaking certainly could be found to have increased the dangers from the leaks. That Bergquist had a procedure in place for such events is demonstrated by the events that occurred at the Decatur Hicksgas: there was an immediate response, advice about purging, and a form to fill out for credit. This procedure demonstrates Bergquist's awareness of the potential for harm in the absence of immediate response and instruction.

In other words, the harm that might occur from leaky tanks was both likely and foreseeable. The burden on Bergquist is minimal, as demonstrated by the ease of the procedure used in Decatur. The burden of guarding against an injury by imposing a duty on Bergquest to respond quickly to a report of leaky tanks is far from onerous. I therefore find that Bergquist owed to the Plaintiffs a duty of reasonable care for their safety under the circumstances presented in this case.

The question immediately presents itself, as pointed out by Bergquist, whether there was

a causal link between Bergquist's failure to respond and the explosion and fire that caused Plaintiffs' injuries, or whether it was the lack of proper response by Bradley Clark or other employees at Hicksgas. That, however, is a question for the jury, not one that can be weighed and determined on paper.

## CONCLUSION

For the reasons stated herein, Bergquist's motion for summary judgment [#75] is granted in as to Count III and denied as to Count IV.

ENTERED ON September 15, 2010

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE