UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Jeremy Grove and Amanda Grove, ) | | |
| Plaintiffs ) | | |
| ) | | |
| v. ) | Case No. 07-1263 | |
| ) | | |
| Manchester Tank Co., and ) | | |
| K. A. Bergquist, Inc., ) | | |
| ) | | |
| Defendants ) | consolidated with | |
| ----------------------------------------------------- ) | | |
| Bradley D. Clark and Michelle L. Clark, ) | | |
| Plaintiffs ) | Case No. 07-1268 | |
| ) | | |
| v. ) | | |
| ) | | |
| Manchester Tank Co., and ) | | |
| K. A. Bergquist, Inc., ) | | |
| Defendants ) | | |
| ) | | |
| ----------------------------------------------------- ) | and | |
| Larry K Smith, Jr. and Melissa Smith, ) | | |
| Plaintiffs ) | Case No. 07-1280 | |
| ) | | |
| v. ) | | |
| ) | | |
| Manchester Tank Co., and ) | | |
| K. A. Bergquist, Inc., ) | | |

**ORDER and OPINION**

The parties have consented to have these three consolidated cases heard to judgment by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c), and the District Judge has referred the cases to me. Now before the Court are: the motion for summary judgment and the motion to strike, filed by defendant K. A. Bergquist Inc. as to the Grove Plaintiffs' claim (#114 and #118); K. A. Bergquist's motion for summary judgment as to the Clark Plaintiffs' claim (#119); and K. A.

1

Bergquist's motion for summary judgment as to the Smith Plaintiffs' claim (#121)[1]. The motions are fully briefed, and I have carefully considered the arguments made and evidence submitted by the parties. The motions are granted.

**JURISDICTION AND VENUE**

The Plaintiffs are citizens of the State of Illinois. Defendant Manchester Tank & Equipment Company was incorporated in Delaware and has its principle place of business in Tennessee. Defendant K. A. Bergquist Inc. was incorporated in the State of Ohio and has its principle place of business in Toledo, Ohio.

Third Party Defendant Hicksgas-Pekin Inc. was incorporated in the State of Indiana and has its principle place of business in Illinois. The citizenship of a third party defendant, adverse solely to a third party plaintiff (i.e. not adverse to the original plaintiff), is irrelevant to the existence of diversity jurisdiction. Caterpillar Inc. v. Lewis, 519 U.S. 61, 66 n.1 (1996); Fidelity & Deposit Co. of Md. v. City of Sheboygan Falls, 713 F.2d 1261, 1266 (7th Cir. 1983); Sabo v. Dennis Technologies, LLC, - F. Supp. 2d -, Case No. 07-283-DRH, 2007 WL 1958591 at n.5 (S.D. Ill.2007). Here, the only dispute involving Hicksgas is with the other Defendants; both K. A. Bergquist and Manchester Tank have third party claims against Hicksgas, but the Plaintiffs have no claims against Hicksgas-Pekin Inc. See, Second Amended Complaints (Docs. #69, 70, 71). Hence the presence of Hicksgas-Pekin Inc. does not destroy diversity in this case.

---

[1]The practice in this Court in consolidated cases is to file all documents in the lead case. Hence, references to document numbers contained in this Order are to document numbers in 07-1263. Because some documents were originally wrongly filed in the member case and were later re-filed by the clerk in the lead case, document numbering is not always chronologically sequential.

The amount in controversy in each of these three consolidated cases exceeds the statutory minimum of $75,000.

Because the Plaintiffs and Defendants are diverse and the minimum amount in controversy has been met, this Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C.1332.

## SUMMARY JUDGMENT GENERALLY

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment should be entered if and only if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. See Jay v. Intermet Wagner Inc., 233 F.3d 1014, 1016 (7th Cir.2000); Cox v. Acme Health Serv., 55 F.3d 1304, 1308 (7th Cir. 1995).

In ruling on a summary judgment motion, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). The court's role in deciding the motion is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe. Waldridge v. American Hoechst Corp., 24 F.3d 918, 922 (7th Cir.1994). The court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial.

The court is to examine all admissible facts, viewing the entirety of the record and accepting all facts and drawing all reasonable inferences in favor of the non-movant, Erdman v. City of Ft. Atkinson, 84 F.3d 960, 961 (7th Cir. 1996); Vukadinovich v. Bd. of Sch. Trustees, 978 F.2d 403, 408 (7th Cir. 1992), cert. denied, 510 U.S. 844 (1993); Lohorn v. Michal, 913 F.2d 327, 331 (7th

Cir. 1990); DeValk Lincoln-Mercury, Inc. V. Ford Motor Co., 811 F.2d 326, 329 (7th Cir. 1987); Bartman v. Allis Chalmers Corp., 799 F.2d 311, 312 (7th Cir. 1986), cert. denied, 479 U.S. 1092 (1987), and construing any doubts against the moving party. Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970); Trotter v. Anderson, 417 F.2d 1191 (7th Cir. 1969); Haefling v. United Parcel Serv., Inc., 169 F.3d 494, 497 (7th Cir.1999).

The parties must identify the evidence (i.e. those portions of the pleadings, depositions, answers to interrogatories, admissions, affidavits, and documents) that will facilitate the court's assessment. Waldridge, 24 F.3d at 922. Thus, as Fed.R.Civ.Proc. 56(e) makes clear, a party opposing summary judgment may not rely on the allegations of her pleadings. Rather:

> [T]he adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

See, Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)[2]. See also, Local Rule CDIL 7.1(D).

Neither the moving party nor the responding party may simply rest on allegations; those allegations must be supported by significant probative evidence. First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 290 (1968). See also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)(when the moving party has met its burden, non-moving party must do more than show some "metaphysical doubt " as to material facts). A scintilla of evidence in support of the non-moving party's position is not sufficient to oppose successfully a summary

---

[2]The Clark and Smith Plaintiffs assert that "any general allegation of negligence is sufficient to sustain a pleading and to permit a case to go forward, and it is only at the trial stage that specific facts have to be proven," citing Ash v. Wallenmeyer, 879 F.2d 272, 274 (7th Cir. 1989). Ash was a case about notice pleading, not the proper standard to apply at summary judgment. It does not stand for the proposition that a party may rely on allegations in the complaint to survive summary judgment.

judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250.

## STATEMENT OF UNDISPUTED FACTS

The following recitation of facts is taken from the parties' statements, the responses and replies thereto, and the evidence submitted in support. Those statements consist primarily of incorporation of the statements of fact with supporting evidence that were submitted in Bergquist's earlier motion for summary judgment and the response and reply thereto. An Order was entered, resolving that earlier motion for summary judgment, and the parties have also incorporated into the present motion the Court's recitation of undisputed, material facts from that Order. In the instant Order the Court has reproduced much of the statement of facts from its previous Order, revising and supplementing as necessary and as noted.

Manchester Tank and Equipment Company (herein "Manchester") designs and manufactures aluminum tanks. Instructions and warnings, also prepared by Manchester, accompany those tanks when sold. K. A. Bergquist Inc. (herein "Bergquist") distributes and sells those tanks. Bergquist plays no role in and exercises no control over the design or manufacture of the tanks or in preparing the instructions and warnings. Hicksgas Pekin Inc. (herein, "Hicksgas") purchases the tanks from Bergquist and fills them with, *inter alia*, propane gas. The tanks are filled and stored at various Hicksgas' facilities, including as pertinent here a facility in Pekin, Illinois, and another in Decatur, Illinois.

In early August of 2005, Jake Slagley, the manager of the Hicksgas facility in Decatur, found a leaky Manchester tank at his facility. He contacted Bergquist, and spoke with someone named Tom. Tom took down information over the phone. Shortly thereafter, Slagley received a "field

destroy form," which instructed him to dispose of the cylinder, sign the form, and send it back to Tom for a credit.

On August 23, 2005, Bradley Clark, the manager of the Pekin Hicksgas facility, discovered that five brand new aluminum Manchester Tanks, which had been filled in Pekin with propane gas, were leaking. These tanks were separated from other tanks on the property and placed at the edge of the bottle dock at the Hicksgas facility. Clark then called Bergquist, seeking guidance as to what to do with the five tanks. No one from Bergquist returned his call. On August 25, there was an explosion and fire at the Pekin Hicksgas facility. Three employees were injured: Bradley Clark, Jeremy Grove, and Larry Smith.

These three employees, along with their wives, filed separate complaints in Tazewell County. The cases were removed to this Court and consolidated. The original state court complaints named Manchester as defendant and Bergquist as respondent in discovery. Manchester was sued as the manufacturer of the tanks. First amended complaints added Bergquist as a defendant, alleging that Bergquist was strictly liable for selling the leaky tanks to Hicksgas based on allegations that Bergquist sold defective propane gas tanks to Hicksgas and that the tanks were unreasonably dangerous at the time they left Bergquist's control "in that they permitted propane to leak out of said tank(s), resulting in an explosion and fire ..." On April 4, 2008, Bergquist answered, denying all liability and setting forth affirmative defenses.

Based on information learned during discovery, Plaintiffs filed second amended complaints (Docs. #69, 70, and 71) that added a second count against Bergquist, this one sounding in negligence. The negligence counts alleged that Bergquist failed to advise Hicksgas employees to remove the leaking tanks from service immediately and without the need for an inspection by

6

Bergquist, and that the cost of the tanks would be refunded or credited without the need of an inspection by Bergquist.

Bergquist moved for summary judgment[3] as to both the strict liability and the negligence counts. This Court ruled that the strict liability claim could not stand but that the negligence claim survived. Bergquist now moves for summary judgment on the negligence claim, this time arguing that the testimony from Plaintiffs' expert does not support the negligence claim against Bergquist.

David Heldenbrand is the plaintiffs' expert. He is a civil engineer, and his testimony relates to the cause and origin of the fire. In his opinion, the incident was a "deflagration" or "an ignition of gases ... that does not travel faster than the speed of sound." He opines that this fire began in the "filling area," on the south end of the dock, while the leaking tanks were located on the north end of the dock on the day of the deflagration. The fire was caused by a weld failure on a tank that was being filled at the time of the deflagration or a tank that had been filled "immediately prior to" the explosion. In either event, Heldenbrand opines that the cause and origin of the fire was the filling operation on the south end of the dock, not the five tanks on the north end of the dock.

## DISCUSSION

The three motions for summary judgment are identical, and they are therefore treated as one in this order. Bergquist argues that the expert's testimony directly contradicts the pleading that the Plaintiffs' injuries were caused by its negligent failure to respond quickly to a report of leaky tanks.

The Clark and Smith Plaintiffs respond that the five leaking tanks were "among the relatively new 33-pound aluminum cylinders recently purchased ..., as were the relatively new 33-pound cylinders whose weld failed at the time of or immediately after being filled which provided the fuel

---

[3]The motion was filed as a motion to dismiss. The Court converted it to a motion for summary judgment pursuant to Fed.R.Civ.P. 12(d). See Order of 5/11/2010 (Doc. #80).

7

which caused the explosion and fire." (Doc. #116, ¶ 2). Plaintiffs theorize that Bergquist can be liable for its "negligent failure ... to promptly investigate this sudden outbreak of leaks and to determine that these tanks all came from the same batch or production run and to advise Hicksgas employees of the serial numbers of any other such tanks from the same production run so Hicksgas employees could remove all such tanks from service pending further testing." The "sudden outbreak of leaks" to which Plaintiffs refer includes the prior leak reported at the Decatur facility, as well as the five leaking tanks reported at the Pekin facility. Once Bergquist became aware of this outbreak, Plaintiffs opine that it "should have been aware that an epidemic of leaking tanks was going on which would demand a more global response." (Id. at ¶ 3).

The Grove Plaintiffs respond similarly. They assert that Bergquist was in a "superior position from a knowledge standpoint" in that Bergquist was aware of the previous report of a leaking tanks in Decatur while they had no such knowledge. Despite that knowledge, these Plaintiffs argue that Bergquist acted negligently when it failed to alert the Hicksgas employees in Pekin that there "appeared to be a pattern of defective welds on the aluminum Manchester tanks." (Doc.#117 at ¶ 4 and 5).

Rather than filing a reply brief, Bergquist has filed a motion to strike these responses. None of the Plaintiffs have responded to this motion. The Court presumes, therefore, that there is no opposition and rules without further notice to the parties. Local Rule 7.1.

In the motion to strike, Bergquist has characterized the Plaintiffs' responses as "moving targets." According to Bergquist, these responses add an additional theory of liability, one that has never been plead. Bergquist posits that the Plaintiffs' responses to its motions amount to an improper attempt to amend their complaints. Improper, according to Bergquist, because Fed.R.Civ.P. 15

requires (at this late stage) either consent from the other parties or a court order to amend a complaint, neither of which as been sought or obtained. Improper also, because expert discovery has closed, and it would be prejudiced by this surprising development. Improper, finally, because this amendment would be futile.

Although leave to amend a complaint should be freely granted when justice so requires, see Fed.R.Civ.P. 15(a), an amendment need not be allowed when there is, *inter alia*, undue delay, undue prejudice to the opposing party, or when the amendment would be futile. Bethany Pharmacal Co., Inc. v. QVC, Inc., 241 F.3d 854, 860 - 861 (7th Cir.2001).

Here, where the cases are already well over three years old and where fact and expert discovery has been closed for some time, the delay in proposing any such amendment - which would clearly require a re-opening of both fact and expert discovery - can only be characterized as undue. The Plaintiffs knew from the instant they received their expert's report on Sept. 30, 2010, that his opinions were not in line with their pleadings. Yet at no point in the intervening six months have they sought to amend, and no explanation for the delay has been offered.

Similarly, if the amendment were to be allowed at this point in time, there is no question that Bergquist would find itself in the position of having to defend a theory that it was never allowed to explore in discovery. This is clearly prejudice and it is prejudice that can clearly be characterized as undue.

An amendment is futile if the added claim would not survive a motion for summary judgment. Bethany, 241 F.3d at 861. None of the arguments presented by Bergquist address the substantive question that must precede a ruling of futility; Bergquist simply states that any such amendment would be futile because it would be nothing more than an attempt to avoid the effect of

summary judgment on the existing claim. That tautology - the amendment would be futile because it is dilatory - is rejected. There is nothing in the record that would allow the Court to rule whether or not such an amendment would be substantively futile.

The motion to strike and the motions for summary judgment are well taken. The Plaintiffs' responses are not proper summary judgment responses; they do not squarely address the arguments made in the motions. They constitute only an effort to create some wiggle room in their theory of these cases, room that simply does not exist at this time, given the procedural postures of these cases. Their own expert's testimony dooms their negligence claim as it is currently stated.

## CONCLUSION

For the reasons stated, the Motion to Strike (#118), and the Motions for Summary Judgment (#s 114, 119 and 121) are GRANTED as to the negligence claim of the Plaintiffs against K.A. Bergquist (Count IV). As summary judgment was granted as to the only other claim against Bergquist (Count III) by earlier Order, there are no remaining claims against Bergquist. Bergquist is therefore terminated as a party in this case.

ENTERED ON April 19, 2011

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE